55 CCPA

## Application of Ferdinand MARKERT, Willibald Funk, Gottfried Richter and Otto Frey.

### Patent Appeal No. 7967.

United States Court of Customs and Patent Appeals.

June 13, 1968.

Rehearing Denied Oct. 10, 1968.

Marzall, Johnston, Cook & Root, Herbert B. Keil, Chicago, Ill., for appellants.

Joseph Schimmel, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRK-PATRICK,* Judges.

SMITH, Judge.

The present appeal relates to a process for the production of gaseous olefins by cracking hydrocarbons. The asserted improvement resides in rapidly cooling the reaction gases "without side reactions and without troublesome coke formation." Appellant asserts that this result is obtained:

\* \* \* by supplying to the current of reaction gases which are at the reaction temperature, in a cooling chamber, one or more compact jets of liquid containing an amount of liquid sufficient to cool the gas current by at least 100°C, the said jet or jets being supplied laterally at such a pressure-head that the jet or jets penetrate the gas current and are disintegrated therein.

The board[1] affirmed the examiner's final rejection of appealed claims 1–9, inclusive, as "obvious over" the references:

| Forward | 2,144,488 | January 17, 1939 |
| Kosbahn et al. | 2,719,184 | September 27, 1955 |

While the examiner in his Answer rejected *all* the claims on this basis, the board's opinion of December 21, 1965 seems to treat the claims somewhat differently. Thus, its opinion refers to the final rejection of claims 1 to 3 and 5 and a refusal "to allow claims 4 and 6 to 9 which were amended after final rejection." The board, however, did not comment further on the rejection and proceeded to treat all the claims as being rejected under 35 U.S.C. § 103, stating:

Claims 1 to 9 are rejected as being "obvious over either of Forward or Kosbahn et al." The Examiner holds

that the gas quenching by "lateral" water injection, which is employed in an old cracking procedure, is shown by each of the references. We agree. We see nothing unobvious in this procedure as applied to ordinary gas-quenching operations and we will sustain the rejection.

The foregoing recital of the background of the present appeal highlights the apparent failure of the appellants, the examiner, and the board to have joined issue on the grounds of rejection. As will be noted later, this extends also to the question as to precisely what limi-

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. The board consisted of Mr. Behrens, Examiner-in-Chief, who wrote the opinion and Messrs. Stone and Campbell, *Acting* Examiners-in-Chief. My views concerning the lack of jurisdiction of a board so constituted have been set forth in my dissenting opinion in In re Wiechert, 370

F.2d 927, 54 CCPA 957 (1967). This view was there rejected by the majority and the issue has not been raised here by appellants. Under these circumstances and until this jurisdictional question is otherwise settled, my duty appears to be to participate in the present appeal despite my substantial reservations as to the jurisdiction of a board so constituted.

tations were present in appealed claims 4–9 when rejected by the examiner and when this rejection was affirmed by the board.

As we view the claims on appeal, claims 1–3 stand or fall together on the obviousness rejection, while claims 4–9 stand or fall together on the same rejection, but for somewhat different reasons.

Claim 1, selected by us as representative of the first group, is:

1. An improvement in a process for the preparation of gaseous olefines wherein hydrocarbons are cracked in a fluidized bed at temperatures between about 650° and 850°C which comprises: passing a current of said gaseous olefines from a cracking zone through an outlet pipe and into a cooling chamber, the diameter of said cooling chamber being substantially greater than the diameter of said pipe, and thereafter cooling said gaseous olefines by injecting a single compact jet of liquid into said current, the area of contact between said current and said jet of liquid being spaced inwardly from the walls of said cooling chamber, said jet of liquid being supplied laterally to said current of gaseous olefines under sufficient pressure to enable said jet of liquid to penetrate the current a predetermined amount, whereby said jet of liquid is torn apart by the gas current and the gases are thereby rapidly cooled.

Claim 4, selected by us as representative of the second group, is:

4. An improvement in a process for the preparation of gaseous olefines wherein hydrocarbons are cracked in a fluidized bed at temperatures between about 650° and 850°C which comprises: passing a current of said gaseous olefines from a cracking zone through an outlet pipe and into a cooling chamber said gaseous olefines entering said cooling chamber with a pressure-head of 20 to 1,000 millimeter water column, the diameter of said cooling chamber being substantially greater than the diameter of said pipe, and thereafter cooling said gaseous olefines by injecting at least one compact jet of liquid into said current, the area of contact between said current and said jet of liquid being spaced inwardly from the walls of said cooling chamber, said jet of liquid being supplied laterally to said current of gaseous olefines wherein the product of the ratio of the pressure-head of the jet of liquid to the pressure-head of the gas current and the ratio of the diameter of the jet of liquid to the diameter of the gas current lies within the range of from about 0.01 to about 3, all four variables being measured at the points of entry into the cooling chamber, whereby said jet of liquid penetrates said current a predetermined amount and is torn apart by the gas current and the gases are thereby rapidly cooled.

Comparison of the claims establishes that the principal difference between the two groups resides in the inclusion of certain so-called "numerical parameters" in claims 4–9 which are missing in claims 1–3.

We affirm the obviousness rejection of claims 1–3,[2] assuming that claims 1–3 were not cancelled. In reaching this conclusion, we do so after reviewing the references and finding ourselves in agreement with the examiner's "brief description" thereof which we here adopt. The examiner's Answer contains a description of the references relied upon which is as follows:

Forward relates to the cracking of heavy hydrocarbon oils to produce

2. The irregularities in the present record are such that we cannot be certain whether claims 1–3 are still in the case. If the amendment of November 20, 1964 was entered to insert amendments in claims 4 to 9 for purposes of appeal, we find nothing which retracts the cancellation of claims 1–3 which was specified therein. Conversely, if the amendment was not entered, the record does not establish how the amendments therein proposed to claims 4–9 were entered and now appear in these claims as appealed.

lighter hydrocarbon oils. The hot oil vapors are cooled by lateral injection of a quenching liquid under pressure in the form of a jet * * *.

Kosbahn et al. relates to the production of acetylene by partial oxidation of hydrocarbons with oxygen. The reaction mixture is quenched by injection of water through jets * * *.

As stated in their brief, it is appellants' position as to claims 1 and 3 that:

* * * There are at least five specific features of the process which are neither disclosed nor suggested in either of the cited references. With respect to Claim 1 * * * these features are as follows:

(1) Highly reactive gaseous olefins are produced.

(2) The diameter of the cooling chamber is substantially greater than the diameter of the pipe carrying the gaseous olefins (preferably at least seven times as large).

(3) A *compact jet* of liquid is injected into the current of olefins.

(4) The area of contact between the compact jet of liquid and the olefin current is spaced inwardly from the walls of the chamber.

(5) The compact jet of liquid is supplied laterally to the olefin current under sufficient pressure to enable the compact jet of liquid to penetrate the current a predetermined amount whereby the jet of liquid is torn apart and the gases are rapidly cooled.

In Claim 3, element No. 3 includes injecting a *plurality* of *compact jets* of liquid into the current under varying pressure heads to insure that an entire cross-section of the current is uniformly contacted by the liquid. The other claims include other elements also not disclosed or suggested in the cited references.

As is too frequently the case, the legal issue has thus become obscured by semantic differences, i. e., what is the meaning of "compact jet" as used by appellants, and how does this differ from the "jets" of the references? Appellants' brief here would have us distinguish between these terms on the basis of the argument advanced in their brief:

There is no room for doubt but that the term "jet" or "jets" as it is used in the patents refers to something other than the *compact jet of liquid* disclosed and claimed by appellant-applicants. In the Kosbahn et al. and Forward patents the term "jet" refers to the device which is used to inject the water into the gaseous stream. In appellant-applicants' specification and claims the term "compact jet" refers to a solid stream of liquid coolant. This term as it is used in appellant-applicants' specification cannot be interpreted in any other way. The dictionary definition of "jet" includes (1) a liquid or gas which issues in a jet, and (2) a nozzle for a jet of gas, water, etc. (see Webster's New Collegiate Dictionary, page 453). The term "compact" is defined in Webster's Dictionary as "closely united or compact; closely knit; solid; dense; etc." The compact jet which is described in the present specification should not in any way be confused with either (1) a spray of liquid, or (2) a jet mechanism designed to inject water into a cooling chamber. * * *

We have carefully reviewed appellants' specification without finding any basis for relating the term "compact jet," as used therein, to "a solid stream of liquid coolant." As this seems to be the fundamental basis for appellants' asserted distinction between the process claimed in claims 1–3 and the prior art processes, we turn to the postition stated in the examiner's Answer:

Appellants contend Forward and Kosbahn et al. use a spray as a quench stream instead of the claimed compact jet. Appellants further contend that unexpected advantages of the compact jet as a quenching stream as compared to the spray of the references are shown by the Rule 132 affidavit. It is noted that the specific examples of appellants' specification indicates the

compact jet was sprayed into the quench zone. There is no particular distinction between compact jet and spray that is recognized even in appellants' own specification. The affidavit filed under Rule 132 is of no value in distinguishing over the Forward and Kosbahn et al. spray or jets since appellants use both spray and compact jet to describe their quenching stream. * * *

Where patentability is predicated on such a variant as the difference between a "compact" jet stream and the equally "compact," but perhaps smaller diameter, separate "jet" stream disclosed by the prior art, it must be clearly defined. General Electric Co. v. Wabash Appliance Corporation, 304 U.S. 364, 369, 58 S.Ct. 899, 82 L.Ed. 1402 (1938). Thus, we agree with the examiner that the language employed in appealed claims 1–3 as to the use of a "compact" jet or jets does not distinguish appellants' invention in any unobvious manner over the disclosures of the cited prior art within the meaning of 35 U.S.C. § 103.

The present record establishes that it is the relative pressures and diameters of the gas stream and of the liquid jet which determine whether a "jet" is a "compact" jet or not. Thus, appellants' specification points out:

It can readily be ascertained by experiment within what pressure-head range a jet of liquid of a given diameter will penetrate a gas current of a given pressure-head and diameter. In this range, the jet of liquid is torn apart by the gas current and the latter thereby cooled very rapidly. If, on the contrary, the pressure-head of the jet of liquid is so small that it will not penetrate appreciably into the gas current, then the gas current is not cooled efficiently and rapidly enough. If, however, the jet of liquid has so high a pressure-head that it passes right through the gas current, then the

liquid jet is not torn apart and, as a result, the gas current is not cooled efficiently or rapidly enough. * * *

It would appear to us, as it apparently did to the examiner and the board, that a stream of coolant of a given diameter under a sufficiently high pressure-head would be a "compact jet" within the meaning of this term as used in the appealed claims and, as such, is disclosed in the Kosbahn and Forward references. Likewise, it would be a "solid stream of liquid coolant" as that term is used in appellants' brief.

To support their arguments, appellants rely upon the Frey affidavit. The board criticized this affidavit considering that Frey attempted to "interpret" the references and pointed out that "his qualifications as an interpreter of patents of the United States are not stated." We have reviewed the Frey affidavit and do not agree that it shows an attempt to "interpret" the references. Rather, it seems to us to be a helpful statement of one of skill in this art who factually sets forth what he finds to be stated in the references. However, even with the Frey affidavit before us for whatever factual data it may contain, that data is insufficient to support an interpretation of claims 1–3 as containing unobvious differences between appellants' invention and the prior art when the invention is considered as a whole under 35 U.S.C. § 103.

Claims 4–9, in addition to the "compact jet" limitation of claims 1–3, contain a recital of "numerical parameters" which apparently were included as a means for further defining appellants' "compact jet" concept and for distinguishing it over the art. Despite the presence in the claims of at least certain of these "parameters," the examiner did not consider the claims to cover an unobvious invention.

While there is a hiatus in the record[3] as to precisely what is before us for con-

---

3. It is not clear from the record as to whether the *claims as amended* by the amendment of November 20, 1964 were before the examiner. The recitals of certain of the "parameters" in claims 4–9 appear first in the amendment of Novem-

sideration as to the rejection of claims 4–9 on grounds other than obviousness, the board acted on the assumption that the appealed claims contained all the numerical parameters which now appear therein and stated:

> Appellants' numerical parameters are not disclosed nor shown to be significant or critical. Certainly the extent of the ranges of ratios suggests that values are not critical. Moreover, the variation in a single jet—or a multitude of jets—to obtain a gas stream penetration which is sufficient to reach the internal—or more remote in the case of a single jet—areas of gas streams cross-section would be within the skill of an ordinary operator. As applied to gas and water streams of non-circular cross-section (1:20 rectangles, for instance) the skill of the operator would be of more value than appellants' catch-all formulae.

On petition for rehearing, appellants stated:

> In the last paragraph of page 2 of its decision the Board made statements with respect to numerical parameters, rectangles, skill of the operator, etc. These remarks seem to be directed to the sufficiency of appellants' disclosure and/or the definiteness of appellants' claim. *It is not appellants' contention that the numerical parameters disclosed in the application are inventive.* Rather, armed with the knowledge of the present invention one skilled in the art could easily adjust water pressure or jet diameter to provide a satisfactory process. It is appellants' contention that the use of a compact jet or jets of liquid in the present process rather than a spray or some other means represents a significant advance in the art * * *. [Emphasis added.]

ber 20, 1964 which is designated in this record as "not entered," presumably because of the examiner's letter of December 14, 1964 in which he stated:

> The proposed amendment filed November 20, 1964 will be entered for the purpose of appeal, *if requested by ap-*

Since appellants do not appear now to consider that the numerical parameters recited in claims 4–9 are nonobvious, the issue as to these claims necessarily turns on the "compact jet" argument advanced as to claims 1–3.

We therefore affirm the board's decision as to the obviousness of appellants' invention as claimed in appealed claims 4–9 *as they here appear* in the record.

Affirmed.

*plicant,* when an appeal has been filed. [Emphasis added.]

We do not find in the present record any request for the entry of the amendment, but find that the amendments were entered in appealed claims 4 to 9 as they now appear in the record.